# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| **WILBUR-ELLIS COMPANY LLC,** | Case No. 4:23-cv-04058-LLP |
| Plaintiff, | |
| v. | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** |
| **KEVIN ERIKSON, and J.R. SIMPLOT COMPANY,** | |
| Defendants. | |

Plaintiff Wilbur-Ellis Company LLC ("Wilbur-Ellis" or "Plaintiff") by counsel, submits this reply to Defendants Kevin Erikson ("Erikson")'s and J.R. Simplot Company ("Simplot")'s (collectively "Defendants") May 7, 2023 responses [Dkts. 25, 23] to Plaintiff's Motion for Preliminary Injunction or, in the Alternative, Temporary Restraining Order [Dkt. 4] and May 2, 2023 Letter to the Honorable Piersol [Dkt. 22].

## INTRODUCTION

Defendants' Oppositions to Plaintiff's Motion for a Temporary Restraining Order do not contest the key facts in this case. First, that Erikson is a former employee of Wilbur-Ellis and is now working for a direct competitor, Simplot. Nor do Defendants dispute that Erikson is competing within the Restricted Territory, identified in Erikson's Employment Agreement with Plaintiff, and actively and aggressively targeting the same exact customers he worked with while employed by Plaintiff. The only question raised in Defendants' oppositions is whether the restrictive covenants, to which Erikson admits that he was bound, remained in effect after the employment agreement terminated.

Defendants submit that the Court should deny Plaintiff's Request for a Temporary Restraining Order, seeking to apply an extremely limited in temporal scope, based on two arguments – that Plaintiff is unlikely to succeed on the merits and that Defendant will not suffer irreparable harm.  As set forth below, Defendants arguments are without merit.  Therefore, a temporary restraining order is necessary to protect Plaintiff from experiencing continued unquantifiable harm pending the outcome of this litigation.

## ARGUMENT

Defendants' opposition to Wilbur-Ellis's Motion focuses on two *Dataphase* factors to argue against the issuance of a temporary restraining order: (1) the probability that Wilbur-Ellis will succeed on the merits of its claims; and (2) the threat of irreparable harm to Wilbur-Ellis if the Court does not enter a temporary restraining order.  *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (*en banc*). Notwithstanding Defendants' contrived arguments to the contrary, both factors weigh in favor of granting the preliminary injunction or, in the alternative, temporary restraining order requested here by Wilbur-Ellis.

I.     **WILBUR-ELLIS IS LIKELY TO SUCCEED ON ITS CLAIMS**

At the outset, Defendants misunderstand a movant's burden of proof to obtain a temporary restraining order.  Defendants assert that a temporary restraining order is inappropriate because Plaintiff cannot show a likelihood of success on the merits.  This, however, overstates Plaintiff's burden of proof − the hearing is not an attempt to predetermine the merits of a case on only a preliminary showing. Such an approach would

reduce this factor to a mathematical equation calculating likelihood of success. *See N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 n.3 (8th Cir. 1984). The Eighth Circuit has further clarified that, "the question is not whether the movant has proved a greater than fifty percent likelihood that it will prevail," *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007), but rather whether any of its claims provide a "fair ground for litigation." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).[1] However, even applying Defendants' incorrect standard, Plaintiff is entitled to a temporary restraining order in this matter because Wilbur-Ellis is likely to succeed on its claims.

In opposition to Plaintiff's Motion for a Temporary Restraining Order, Defendants contend that the non-compete and non-solicitation provision are unenforceable. These contentions fail because *Miller v. Honkamp* is not dispositive to the case at hand, because (among other things) unlike Miller, Defendant Erikson's Employment Agreement (the "Agreement") contains a survival provision.

### A. The Survival Provision of Erikson's Employment Agreement Results in the Continued Enforceability of the Non-Compete and Non-Solicitation Provisions

Defendants attempt to argue pursuant to *Miller v. Honkamp Krueger Financial Services Inc* ("*Miller v. Honkamp*"), the provisions of Erikson's Employment Agreement are unenforceable because provisions cannot survive past the termination of the employment agreement. This argument fails because, unlike *Miller v. Honkamp*, Erikson's employment agreement has a survival provision, permitting the continuation of obligations

---

[1] "In considering the likelihood of the movant prevailing on the merits, a court does not decide wither the movant will ultimately win." *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007).

after the termination of the agreement. *Nolde Bros. v. Loc. No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 252, 97 S. Ct. 1067, 1072, 51 L. Ed. 2d 300 (1977). These provisions have been upheld by the Eighth Circuit as enforceable. *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.,* 616 F.3d 872, 878 (8th Cir. 2010)(upholding the enforcement of a provision that enforced contract obligations after the expiry of the term). In *Miller v. Honkamp*, the Eighth Circuit determined that Miller's non-compete obligation terminated when the employment agreement ended. *Miller v. Honkamp,* 9 F. 4th 1001, 10015 (8th Cir. 2021). The Eighth Circuit reached this conclusion because there was <u>*no language*</u> that indicated that the parties intended for the obligation to survive the termination of the contract. *Id.* at 1014. In contrast, the Employment Agreement here provides for the continuation of provisions of Erikson's Employment Agreement, including the non-compete and non-solicitation provisions and states that:

> <u>Entire Agreement; Survival</u>. This Agreement represents the entire agreement and understanding of the parties with reference to the subject matter set forth herein and it supersedes all prior negotiations, discussions, correspondence, communications, understandings and agreements between the parties relating to the subject matter of this Agreement. For the avoidance of doubt, the expiration or termination of this Agreement shall not be deemed a release or termination of any obligations of Employee, or rights of Employer, to the extent such obligations or rights, as the case may be, expressly survive the termination of this Agreement.  [Dkt. 1-1]

Considering the survival provision of Erikson's Employment Agreement, Defendant Erikson is presently subject to the non-compete and non-solicitation provisions. At a minimum, this issue must be fully briefed and Wilbur-Ellis has demonstrated a plausible chance of prevailing on the merits, meaning that this factor weighs in favor of Plaintiff.

## II. WILBUR-ELLIS WILL SUFFER IRREPARABLE HARM IF THE COURT DENIES ITS MOTION

Wilbur-Ellis demonstrated it will suffer irreparable harm if Defendants are not enjoined from Erikson's continued employment activity in the Restricted Territory and the retention of Wilbur-Ellis's trade secrets and confidential information pending this litigation. The attempted arguments made by Defendants do not mitigate this harm because (1) irreparable harm my be inferred by Erikson's breach and (2) Wilbir-Ellis' losses cannot be adequately remedied by damages alone.

### A. Irreparable Harm May Be Inferred From Erikson's Breach

The Eighth Circuit has repeatedly held that irreparable harm should be inferred when a former employee, like Erikson, decides to violate his restrictive covenants and unfairly compete with their former employer. Defendants do not dispute that Erikson expressly acknowledged and agreed in his Agreement that a violation of his restrictive covenants would constitute irreparable harm and would warrant injunctive relief as a matter of law. In opposition to Plaintiff's Motion, Defendants do not contest that (1) Defendant Erikson is openly poaching Wilbur-Ellis' clients and Simplot is actively supporting Erikson in doing so and (2) there is evidence that Erikson stole over 2,000 files that include substantial customer and business trade secrets.[2]

Courts routinely find that the irreparable injury prong is met if a valid restrictive covenant is breached. *Marco, Inc. v. Advanced Systems, Inc.*, No. CIV 11-4072-KES, 2011

---

[2] As discovery is still ongoing, Plaintiff does not know the extent that the taken information has been utilized by Defendant Erikson or shared with other Simplot employees and representatives.

WL 2748691, at *10 (D.S.D. July 13, 2011); *see Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894 (8th Cir. 2013) ("In a proper case irreparable harm to the employer may be inferred if it can be shown that the employee breached an enforceable restrictive covenant."); *see also Sterling Computers, Corp. v. Fling*, No. 4:19-CV-04137-KES, 2019 WL 5104013, at *6 (D.S.D. Oct. 11, 2019) (ordering preliminary injunction and finding irreparable harm where employer asserted that because of former employee's use of confidential information and violation of the noncompete agreement, former employee and new employer would be able to unfairly compete and undercut former employer); *see also N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984) ("If the noncompete agreements are valid, then we think an irreparable injury has been shown.").

In *ISU Veterinary Servs. Corp.*, the agreements at issue contained language stating that if the employee breached the agreement, then ISU Veterinary Services "would be entitled to temporary and permanent injunctive and other equitable relief." *ISU Veterinary Servs. Corp. v. Reimer*, 779 F. Supp. 2d 970, 983 (S.D. Iowa 2011); The court determined that this language alone gave rise to a finding that irreparable harm existed. *Id; see also Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines*, 510 N.W.2d 153, 158 (Iowa 1993)("When injunctive relief is part of the remedy that the parties stipulated in their agreement, the district court should issue the injunction.").[3] Just as in *ISU Veterinary Services* and *Presto-X-Co.*, Erikson plainly and specifically agreed and

---

[3] Indeed, disregarding such a contractual stipulation would permit the parties to proceed "in a manner directly contrary to the express terms of the agreement[.]" *Marco, Inc. v. Advanced Sys., Inc.*, Civ. 11-4072, KES, 2011 WL 2748691, at *25 (D.S.D. July 13, 2011)

acknowledged that a breach of the Agreement would cause irreparable harm.[4]  As discussed above, the restrictive covenants to which Erikson agreed were valid and enforceable during, and subsequent to, Erikson's employment with Wilbur-Ellis.  Accordingly, even if the Court were to question the evidence of irreparable harm (which Wilbur-Ellis believes is proven – and the Court can infer from Erikson's breaches), Wilbur-Ellis has met its burden of proving irreparable harm simply by virtue of the Agreement and the breaches thereof.

**B.     Wilbur-Ellis's Losses Cannot Be Adequately Remedied by Damages Alone**

Even setting the applicable inference of irreparable harm aside, because Wilbur-Ellis can demonstrate irreparable harm in the form of loss of goodwill, a temporary restraining order is appropriate.  Importantly, and contrary to Defendants' arguments, the resulting harm is not limited to just the damages already suffered in connection with customers who have withdrawn their business from Wilbur-Ellis in favor of Simplot, but also includes future lost profits and goodwill from those customers.

Indeed, there has been—and will continue to be—significantly more lost in terms of customer goodwill.  Erikson held a specially-privileged position of trust that enabled him to develop valuable goodwill for the benefit of *Wilbur-Ellis*, *its* workforce, and *its* employees and owners.  The loss of that goodwill—*i.e.*, customer relationships, credibility, and market recognition, cannot be calculated or forecasted with any precision.  It is

---

[4] Erikson agreed that "a violation of any of the provisions of this Agreement, including its restrictive covenants, will cause irreparable damages to [Wilbur-Ellis], its successors and assigns." (*See* Dkt. 1-1, § 13.)

therefore unsurprising that courts routinely find the loss of customer goodwill, damage to confidential information, and destruction of valuable customer relationships to be harm that cannot be remedied by a simple award of damages.[5]  The same reasoning warrants application here.  For example, if Wilbur-Ellis were to retain a customer, there is no way to predict changes in that customer's future purchasing behaviors or the amount of product and services purchased over the course of the ongoing relationship.

To be sure, Defendants do not (and cannot) dispute that Wilbur-Ellis's relationships with its customers and its customer goodwill are vital to its business or that losing those relationships and goodwill has—and will continue to—significantly damage Wilbur-Ellis in ways that are incalculable.  Likewise, Wilbur Ellis's loss of trade secrets and the threat of Defendants' misappropriation of those trade secrets to compete with Wilbur-Ellis cannot be calculated.[6]

That the damages suffered contain a calculable component does not preclude a

---

[5] *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 742 (8th Cir. 2002) (finding that potential loss of reputation and goodwill among moving party's customers established threat of irreparable harm); *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 790 (8th Cir. 2010) (affirming the district court's finding of irreparable harm where movant presented evidence of loss of goodwill, including potential loss of customers and decreased business operations); *Pro Edge, LP v. Gue*, 374 F.Supp.2d 711, 749 (N.D. Iowa 2005) ("Intangible injuries, such as injury to goodwill and business relationships with customers, may be found to constitute irreparable harm."); *Howard Venture LLC v. Lively*, CIV. 10-4072-KES, 2010 U.S. Dist. LEXIS 62336, at *3 (D.S.D. June 23, 2010) (granting temporary restraining order and citing that plaintiff employer "relies heavily on customer lists and customer goodwill" in addition to the "inherent difficulty with proving [] losses based on what might have otherwise happened in the future between [plaintiff employer] and its customers and competitors.").

[6] A notion that Defendants conveniently fail to address, undoubtedly because there is no viable argument to the contrary.

finding of irreparable harm. *See Glenwood Bridge v. City of Minneapolis*, 940 F.2d 367, 371-72 (8th Cir. 1991); *Pro Edge, LP*, 374 F.Supp.2d at 749 (Finding an adequate showing of irreparable harm due to a decrease in customer base and erosion of goodwill because "[e]ven where money damages are available to compensate for some of the harm to the movant, other less tangible injuries cannot be so easily valued or compensated").

If Defendants are not enjoined from further violations of Erikson's restrictive covenants, Wilbur-Ellis will lose its goodwill, market position, and its competitive advantage.

### III. ANY BOND SHOULD BE LIMITED TO ONE MONTH OF ERIKSON'S BASE SALARY

Defendants' request for a bond in the amount of $350,000.00 must also be rejected because it is not warranted here. Defendants' assertion that the bond should reflect "net profit sales" (Simplot's Opposition (Dkt. 23) at p. 15) is not appropriate. The appropriate bond for a temporary restraining order is not the amount of gross sales, or even profit, that might inure from Erikson's breach, but rather the damage to Erikson associated with having his employment suspended for approximately one month. For example, if Simplot were to suspend Erikson's employment and salary, the monetary damage is easily identifiable and covered by a bond. Should this Court issue a temporary restraining order, Wilbur-Ellis anticipates that will enjoin Defendants' conduct at issue for approximately one month. Accordingly, Wilbur-Ellis proposes that bond be limited to an amount no more than one month of Erikson's base salary. *See, e.g.*, *Metro Networks Communs., Ltd. P'ship v. Zavodnick*, Civ. No. 03-6198 (RHK/AJB), 2004 U.S. Dist. LEXIS 442, at **22-24 (D.

Minn. Jan. 15, 2004) (rejecting Defendant's request to increase Rule 65(c) bond amount to reflect potential commissions because (1) the defendant's competitive conduct would only be enjoined for approximately ten months; (2) his demonstrated abilities in areas outside the scope of the noncompete and confidentiality covenants would not adversely impair his employment opportunities; and (3) there were no assurances that he would have, in fact, earned certain commissions). Therefore, a bond of one month of Erikson's salary is reasonable and equitable.

## **CONCLUSION**

Accordingly, and based on Defendants' Oppositions to Plaintiff's Motion for a Temporary Restraining Order, there are only two issues that must be determined at the May 9, 2023 hearing (1) whether there is sufficient evidence that Erikson stole trade secrets and confidential information from Wilbur-Ellis and (2) whether Wilbur-Ellis will suffer irreparable harm if a temporary restraining order is not granted. Based on the foregoing, Wilbur-Ellis respectfully requests that the Court grant the Motion in its entirety and issue the requested temporary restraining order.

Date: May 8, 2023

/s/ *David J. Goldstein*
David J. Goldstein (Bar No. 4291)
dgoldstein@littler.com
Jeremy D. Sosna (*PHV to be submitted*)
jsosna@littler.com
Kevin M. Cleys (*PHV to be submitted*)
kcleys@littler.com
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402.2136
Telephone: 612.630.1000

***ATTORNEYS FOR PLAINTIFF
WILBUR-ELLIS COMPANY LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on this 8 day of May, 2023, a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** was filed and served via CM/ECF, which will send notice via email to the following:

Nichole J. Mohning
Meredith A. Moore
Cutler Law Firm, LLP
140 North Phillips Avenue, Fourth Floor
PO Box 1400
Sioux Falls, SD 57101
(605) 335-4950
Fax: (605) 335-4961
Email: nicholer@cutlerlawfirm.com
Email:  meredithm@cutlerlaewfirm.com

*Counsel for Kevin Erikson*

**Laura K. Hensley**
Boyce Law Firm LLP
300 South Main Avenue
Sioux Falls, SD 57104
(605) 336-2424
Email: lkhensley@boycelaw.com

*Counsel for J.R. Simplot Company*

                                          */s/    David J. Goldstein*
                                          David J. Goldstein